KING, Appellant,

v.

The JEWISH HOME, d.b.a. Cedar Village, Appellee.

[Cite as *King v. Jewish Home,* 178 Ohio App.3d 387, 2008-Ohio-4724.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–070833.

Decided Sept. 19, 2008.

Tobias, Kraus & Torchia and David Torchia, for appellant.

Denlinger, Rosenthal & Greenberg Co., L.P.A., Gary L. Greenberg, and Emily J. Gelhaus, for appellee.

---

Per Curiam.

{¶ 1} In one assignment of error, plaintiff-appellant Mary King appeals the trial court's entry of summary judgment in favor of defendant-appellee Cedar Village. We affirm.

{¶ 2} King had been employed by Cedar Village as a nursing assistant. Following a work-related injury, King's physician, Dr. Leroy Vickers, informed Cedar Village that King should be placed on light-duty work. King, who is African–American, claimed that Cedar Village instead assigned her to regular-duty work and that she had been denied light-duty work based on her race. King hired an attorney who contacted Cedar Village on her behalf. King also filed a claim of racial discrimination with the Equal Employment Opportunity Commission ("EEOC") and a workers' compensation claim.

{¶ 3} Six months after her injury, Dr. Villabhal Mannava examined King in connection with her workers' compensation claim. According to Dr. Mannava's medical report, King had been asked about, but had failed to disclose to him, an intervening nonwork-related injury. Dr. Mannava learned of the intervening injury only after he had contacted Dr. Vickers.

{¶ 4} Cedar Village administrator Greg Keller received a copy of Dr. Mannava's report. When Keller confronted King about her apparent dishonesty, King claimed that Dr. Mannava had never asked her about intervening injuries. Keller testified in his deposition that he had then contacted Dr. Mannava, who was certain that he had asked King about other injuries and that she had denied any. Keller wrote Dr. Mannava a letter confirming the content of their conversation and asked the doctor to contact him if the letter was incorrect. A few days after writing the letter, Keller fired King for dishonesty.

{¶ 5} King later sued Cedar Village for wrongful discharge. The trial court granted summary judgment in favor of Cedar Village on King's claims of (1) retaliation for filing an EEOC charge, in violation of R.C. 4112.02; (2) retaliation for filing a workers' compensation claim, in violation of R.C. 4123.90; and (3) retaliation in violation of Ohio's public policy protecting an employee's right to hire an attorney to assist her with work-related issues. This appeal followed.

## Standard of Review

{¶ 6} Our standard of review is de novo.[1] Summary judgment is appropriate if (1) no genuine issue of material fact remains; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party.[2]

## Retaliatory Discharge

{¶ 7} All of King's claims are "retaliatory discharge" claims. Retaliatory-discharge claims are analyzed under a burden-shifting approach.[3] If a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to

---

1. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

2. Civ.R. 56(C); *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267; see also *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264.

3. *Young v. Stelter & Brinck, Ltd.,* 174 Ohio App.3d 221, 2007–Ohio–6510, 881 N.E.2d 874, ¶ 20–21; see also *Gallagher v. Frohman,* 1st Dist. No. C–070756, 2008–Ohio–3582, 2008 WL 2780434.

articulate a legitimate nonretaliatory reason for the discharge.[4]  If the defendant is successful, the plaintiff must prove that the employer's stated reason was a pretext and that she was actually fired because she had engaged in protected activity.[5]

{¶ 8} The parties do not dispute that King had established a prima facie case of wrongful discharge, or that Cedar Village had articulated a legitimate reason for King's discharge—dishonesty.  The question on appeal is whether, after viewing the evidence most strongly in favor of King, reasonable minds could have concluded that Cedar Village's proffered reason for firing King was pretextual.

{¶ 9} To create a question of fact regarding pretext, King needed to present evidence upon which a reasonable fact-finder could have concluded that Cedar Village's proffered reason for firing her (1) had no basis in fact, (2) did not actually motivate her discharge, or (3) was insufficient to motivate her discharge.[6]  King argues that she produced enough evidence to survive summary judgment on Cedar Village's "actual motivation," as well as on the sufficiency of Cedar Village's proffered reason.

## Actual Motivation

{¶ 10} To show that an employer's proffered reason did not "actually motivate" a discharge, the plaintiff must indict the credibility of the explanation "by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant.  In other words, the plaintiff argues that the sheer weight of the circumstantial evidence * * * makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." [7]  We agree with the Sixth Circuit Court of Appeals that one way to do this is "to produce sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action." [8]  A jury may then infer that any reliance placed by the employer on such a deliberative process was not "honestly held." [9]

---

4.  Id.

5.  Id.

6.  See *Hollingsworth v. Time Warner Cable*, 157 Ohio App.3d 539, 2004-Ohio-3130, 812 N.E.2d 976, ¶ 23, citing *Manzer v. Diamond Shamrock Chems. Co.* (C.A.6, 1994), 29 F.3d 1078, 1084.

7.  *Manzer*, 29 F.3d at 1084.

8.  *Smith v. Chrysler* (C.A.6, 1998), 155 F.3d 799, 807.

9.  Id. at 807–808.

{¶ 11} In this case, King attempts to cast doubt on the sincerity of Keller's investigation by arguing that Keller should have allowed more time for Dr. Mannava to respond to his letter before firing her, and that Keller should have asked Dr. Mannava more probing questions about the possibility of a misunderstanding. But an employer's investigation into employment matters does not have to be perfect or "[leave] every stone unturned."[10] If Keller had written a letter only, King's argument might be more persuasive. But Keller spoke to Dr. Mannava personally and then followed up with a letter. And Keller allowed two days to pass between writing the letter and firing King.

{¶ 12} King also argues that Keller's explanation for firing her was suspect because she had never before attempted to mislead Cedar Village or her primary-care physician about her intervening injury. But this was irrelevant. The relevant inquiry is whether, after construing the evidence most strongly in King's favor, reasonable minds could have only concluded that Keller actually believed that King had lied to Dr. Mannava. Here, Keller had a medical report written by a neutral third party indicating that King had been dishonest about a work-related matter. And Keller further investigated the matter before making a decision. Based on the record presented, we hold that King did not produce sufficient evidence to create a question of fact regarding Keller's "honest belief."

### Sufficiency of Cedar Village's Explanation

{¶ 13} King next claims that, even if she had lied, she presented enough evidence to create a question of fact regarding whether "dishonesty" was a sufficient reason to motivate her discharge. In support of this somewhat disingenuous argument, King cites a single example where another employee had been warned for a first instance of dishonesty and fired only after a second instance. But Keller testified in this case that it was Cedar Village's policy to discharge employees for dishonesty. And in his deposition, Keller named four other employees who had been terminated for lying in connection with their jobs.

{¶ 14} We hold that summary judgment was properly entered in favor of Cedar Village. The judgment of the trial court is affirmed.

Judgment affirmed.

Sundermann, P.J., Hendon and Dinkelacker, JJ.

---

10. Id. at 807.