[Cite as *Grange Mut. Cas. Co. v. Laughlin*, 2013-Ohio-4447.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| GRANGE MUTUAL CASUALTY COMPANY | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| | : | Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | |
| -vs- | : | |
| | : | |
| PATRICK LAUGHLIN, ET AL. | : | Case No. 12-CA-0089 |
| | : | |
| Defendants-Appellees | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Court of Common
                            Pleas, Case No. 11 CV 01490


JUDGMENT:                   Affirmed


DATE OF JUDGMENT:           October 8, 2013


APPEARANCES:

For Plaintiff-Appellant                 For Defendants-Appellees

JAMES E. FEATHERSTONE                   SEAN HARRIS
610 South Front Street                  445 Hutchinson Avenue, Suite 100
Columbus, OH 43215                      Columbus, OH 43235

                                        GUS M. SHIHAB
                                        65 East State Street, Suite 1550
                                        Columbus, OH 43215

*Farmer, J.*

{¶1} Appellee, Patrick Laughlin, owned a business building wood furniture and cabinets. On March 19, 2010, appellee's nineteen year old nephew, William "Billy" Laughlin, was working with appellee, spraying a lacquer spray material on doors. The two were overcome by the fumes of the lacquer spray. Patrick survived and Billy passed away.

{¶2} On February 7, 2011, Billy's estate, appellee herein, filed a wrongful death action and negligence claims against appellee Patrick and his business, claiming Billy was an independent contractor as opposed to an employee. At the time of the incident, appellee Patrick was insured under three policies of insurance, a fire policy, a homeowner's policy, and a business owner's policy, issue by appellant, Grange Mutual Casualty Company.

{¶3} On November 7, 2011, appellant filed a complaint for declaratory judgment, asking the trial court to interpret and construe the insurance contracts. Appellees filed motions for summary judgment, asking the trial court to declare that Billy was an independent contractor. By judgment entry filed August 29, 2012, the trial court declared there was no coverage under the fire and homeowner's policies, but there were genuine issues regarding coverage under the business owner's policy.

{¶4} A trial on the remaining issue of coverage commenced on September 17, 2012. By judgment entry filed September 26, 2012, the trial court determined Billy was not an employee at the time of his death, and appellant's business owner's policy provided liability coverage to satisfy any potential verdict obtained in the wrongful death action. Findings of fact and conclusions of law were filed on November 1, 2012.

{¶5}   Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶6}   "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO GRANT DECLARATORY JUDGMENT IN FAVOR OF GRANGE MUTUAL CASUALTY COMPANY AND AGAINST ITS INSURED, PATRICK LAUGHLIN, ON CROSS-MOTIONS ASSERTING 'NO GENUINE DISPUTE AS TO ANY MATERIAL FACT.' "

II

{¶7}   "AFTER A BENCH TRIAL, THE TRIAL COURT ERRED AS A MATTER OF LAW RENDERING ITS CONCLUSIONS OF LAW."

III

{¶8}   "THE TRIAL COURT'S FINDINGS OF FACT (NUMBERED 1-15) RECITE FOR THE MOST PART FINDINGS THAT ARE NOT RELEVANT TO AN ANALYSIS OF THE EMPLOYER VS. INDEPENDENT CONTRACTOR QUESTION UNDER *BOSTIC V. CONNER* OR UNDER THE CRITERIA AT R.C. 4123(A)(1)(c)(i-xx)."

I

{¶9}   Appellant claims the trial court erred in denying its motion for declaratory judgment as there were no disputed questions of fact.  Given the fact pattern in this case, we disagree.

{¶10}  Appellant argues pursuant to *Bostic v. Connor,* 37 Ohio St.3d 144 (1988), when issues of fact are not in dispute, it is the duty of the trial court to rule on the existence of an employee relationship as a matter of law.

{¶11} In its judgment entry filed August 29, 2012, the trial court found genuine issues of material fact existed to warrant a trial on coverage under the business owner's policy. In its reply in support for declaratory judgment filed July 10, 2012, appellant relied on the factors set forth in R.C. 4123.01(A)(1)(c), the definition of "employee" under the workers' compensation statutes. Appellant claimed fifteen or sixteen factors out of twenty weighed in favor of Billy having been an employee.

{¶12} As the Supreme Court of Ohio held in *Bostic* at 145-146, "Whether someone is an employee or an independent contractor is ordinarily an issue to be decided by the trier of fact. The key factual determination is who had the right to control the manner or means of doing the work." The *Bostic* court at 146 went on to state, "The determination of who has the right to control must be made by examining the individual facts of each case."

{¶13} Per *Bostic,* we find appellees advanced sufficient evidence to rebut the presumptions argued by appellant. The deposition of appellee Patrick raised genuine issues regarding Billy's work: appellee Patrick and his wife gave aid and assistance to their nephew Billy because they wanted to help him get started in a business, and Billy controlled when, where, and what he wanted to do for his uncle.

{¶14} Upon review, we find the trial court did not err in denying appellant's motion for declaratory judgment.

{¶15} Assignment of Error I is denied.

II, III

{¶16} Appellant claims the trial court erred in finding that Billy was not an employee as it met the statutory test of R.C. 4123.01, and the trial court's findings of facts were not relevant to the decision. We disagree.

{¶17} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52; *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179.

{¶18} On September 17, 2012, the parties filed a stipulation regarding trial on the issue of insurance coverage. The stipulation narrowed the issue "for determination by the finder of fact whether, at the time of his death, William Laughlin, is considered an 'employee" of Patrick Laughlin as defined under the insurance policy and Ohio law."

{¶19} In its Conclusions of Law Nos. 3 and 4 filed November 1, 2012, the trial court answered the sole issue in the negative:

> 3. Weighing all the factors, Patrick Laughlin did not have the right to control Billy Laughlin at Patrick's business. Billy Laughlin was, therefore, not an employee of Patrick Laughlin. At best, Billy was an independent contractor.

4. However, under either the common law right to control test or the statutory test, Billy Laughlin was not an employee of Patrick Laughlin.

{¶20} In support of its position that Billy was an employee, appellant relies on the definition of "employee" under the workers' compensation statutes, R.C. 4123.01(A)(1)(c), to substantiate its position:

As used in this chapter:

(A)(1) "Employee" means:

(c) Every person who performs labor or provides services pursuant to a construction contract, as defined in section 4123.79 of the Revised Code, if at least ten of the following criteria apply:

(i) The person is required to comply with instructions from the other contracting party regarding the manner or method of performing services;

(ii) The person is required by the other contracting party to have particular training;

(iii) The person's services are integrated into the regular functioning of the other contracting party;

(iv) The person is required to perform the work personally;

(v) The person is hired, supervised, or paid by the other contracting party;

(vi) A continuing relationship exists between the person and the other contracting party that contemplates continuing or recurring work even if the work is not full time;

(vii) The person's hours of work are established by the other contracting party;

(viii) The person is required to devote full time to the business of the other contracting party;

(ix) The person is required to perform the work on the premises of the other contracting party;

(x) The person is required to follow the order of work set by the other contracting party;

(xi) The person is required to make oral or written reports of progress to the other contracting party;

(xii) The person is paid for services on a regular basis such as hourly, weekly, or monthly;

(xiii) The person's expenses are paid for by the other contracting party;

(xiv) The person's tools and materials are furnished by the other contracting party;

(xv) The person is provided with the facilities used to perform services;

(xvi) The person does not realize a profit or suffer a loss as a result of the services provided;

(xvii) The person is not performing services for a number of employers at the same time;

(xviii) The person does not make the same services available to the general public;

(xix) The other contracting party has a right to discharge the person;

(xx) The person has the right to end the relationship with the other contracting party without incurring liability pursuant to an employment contract or agreement.

{¶21} It is conceded by appellant that R.C. 4123.01 is but a template for consideration in determining the issue of employment status.  See, Appellant's Brief at 15; November 1, 2012 Conclusions of Law No. 2.  We concur because R.C. Chapter 4123 sets forth Ohio's statutory scheme for workers' compensation; therefore, R.C. 4123.01 defines an "employee" for purposes of workers' compensation.

{¶22}  As cited above, the *Bostic* court at 146 quoted the following from *Gillum v. Industrial Commission,* 141 Ohio St. 373, paragraph two of the syllabus (1943):

"Whether one is an independent contractor or in service depends on the facts of each case.  The principal test applied to determine the character of the arrangement is that if the employer reserves the right to control the manner or means of doing the work, the relation created is that of master and servant, while if the manner or means of doing the work or

job is left to one who is responsible to the employer only for the result, an independent contractor relationship is thereby created."

{¶23} The *Bostic* court at 146 went on to explain:

The factors to be considered include, but are certainly not limited to, such indicia as who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and personnel used; who selects the routes travelled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts.

{¶24} Despite appellant's consistent reliance on the workers' compensation statute, appellant argues the trial court's Findings of Fact Nos. 1-15 were irrelevant to the subject issue.  We find the trial court's findings mirror the evidence presented at trial, and are substantiated in the record.

{¶25} The trial consisted of the testimony of Billy's father (Frank Laughlin), uncle (appellee Patrick), and aunt (appellee Patrick's wife, Deborah Laughlin).  The thrust of appellant's position is that the facts of the case undisputedly lead to a conclusion contra to the trial court's decision, that Billy was an employee.  Appellant argues that because appellee Patrick paid Billy more than $160.00 in a calendar quarter, he was in fact an employee under R.C. 4123.01(A)(1)(b) which states the following:

b. Every person in the service of any person, firm, or private corporation, including any public service corporation, that (i) employs one or more persons regularly in the same business or in or about the same establishment under any contract of hire, express or implied, oral or written, including aliens and minors, household workers who earn one hundred sixty dollars or more in cash in any calendar quarter from a single household and casual workers who earn one hundred sixty dollars or more in cash in any calendar quarter from a single employer, or (ii) is bound by any such contract of hire or by any other written contract, to pay into the state insurance fund the premiums provided by this chapter.

{¶26} Deborah Laughlin described the money as "pocket money" not compensation. T. at 70. Some of the money included a payment to get Billy's taxes done. T. at 34.

{¶27} Although appellant correctly cites the workers' compensation law of Ohio, this argument completely disregards the nature of the agreement between Billy and appellee Patrick. The nature of the family's relationship, the very specific reason for taking in Billy, was best stated by appellee Patrick: "Well, he was my nephew, and I loved him, and I was trying to help him out. He had been in some trouble, so." T. at 53. Appellee Patrick described the issue of payment as follows (T. at 60):

Q. At that time that we're talking about, when you and Billy worked together, did the needs of your business require that you have additional work?

A. No.

Q. So you didn't bring Billy on to help you get more work done?

A. No.

Q. You brought him on to teach him a trade?

A. Yes.

Q. For his benefit?

A. Yes.

Q. In fact, if you were going to hire somebody, either as an employee or an independent contractor, it would have been somebody who had some experience already?

A. Yes.

{¶28} Appellee Patrick did not require Billy to work any set days or hours. T. at 45, 58. If Billy felt like working, he could work. T. at 45, 58-59. Appellee Patrick explained, "I expected him to apply himself and try to learn and work what he could, but if you can't afford to pay someone X amount of dollars, you can't expect X amount of work." T. at 46.

{¶29} It would be error to disregard this relationship. Accepting appellant's position with blinders on would place every family relationship i.e., grandparent/grandchild, under the harsh light of employment status when in fact it is a

gift generated by love to help those who need it or a "bribe" to get a child to do chores or accept responsibility.

{¶30} The "quid pro quo" of the arrangement was also described by Deborah. She explained, "[w]e loved him," and because Billy was having problems, she and her husband decided to help him so he could survive in the world.  T. at 65, 66.  This help was pre-conditioned upon Billy accompanying Deborah to Bible study class every Thursday night.  T. at 66.  Billy could work when he wanted and "was to come and go as he wanted to go, and in the meantime, Patrick would teach him his skills."  T. at 67.

{¶31} By assessing the circumstances as a whole and in particular, the obvious lack of control over Billy's comings and goings, we cannot say that the trial court erred as a matter of law in finding no employment relationship.  Whether Billy was a volunteer or at best an independent contractor was not germane to the issue sub judice.

{¶32} Assignments of Error II and III are denied.

{¶33} The judgment of the Court of Common pleas of Licking County, Ohio is hereby affirmed.

By Farmer, J.

Hoffman, P.J. and

Delaney, J. concur.

_____

Hon. Sheila G. Farmer

_____

Hon. William B. Hoffman

_____

Hon. Patricia A. Delaney

SGF/sg 918

[Cite as *Grange Mut. Cas. Co. v. Laughlin*, 2013-Ohio-4447.]

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| GRANGE MUTUAL CASUALTY COMPANY | : | |
| | : | |
| Plaintiff-Appellant | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| PATRICK LAUGHLIN, ET AL. | : | |
| | : | |
| Defendants-Appellees | : | CASE NO. 12-CA-0089 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio is affirmed.  Costs to appellant.

_____
Hon. Sheila G. Farmer

_____
Hon. William B. Hoffman

_____
Hon. Patricia A. Delaney