[Cite as *DeLong v. Thompson*, 2018-Ohio-770.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| | JUDGES: |
| JACOB DeLONG | Hon. John W. Wise, P. J. |
| | Hon. William B. Hoffman, J. |
| Plaintiff-Appellant | Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 17 CA 21 |
| MATT THOMPSON, et al. | |
| Defendants-Appellees | O P I N I O N |


CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common
                             Pleas, Case No.  15 CV 816


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      March 1, 2018


APPEARANCES:

For Plaintiff-Appellant                 For Defendant-Appellees

PATRICK KASSON                          D. JOE GRIFFITH
JACKIE JEWELL                           DAGGER, JOHNSTON, MILLER
REMINGER CO., LPA                       OGILVIE & HAMPSON, LLP
200 Civic Center Drive, Suite 800       144 East Main Street, P. O. Box 667
Columbus, Ohio  43215                   Lancaster, Ohio  43130

*Wise, P. J.*

{¶1}    Appellant Jacob DeLong appeals from the decision of the Court of Common Pleas, Fairfield County, ruling in favor of Appellees Matt Thompson and Fence Solutions, Inc. following a bench trial.

### STATEMENT OF THE FACTS AND CASE

{¶2}    The relevant facts are as follows:

{¶3}    On December 30, 2015, Appellant Jacob Delong filed a Complaint in the Fairfield County Court of Common Pleas against Matt Thompson and Fence Solutions, Inc. alleging claims of Worker's Compensation Retaliation, Disability Discrimination, Violation of the Ohio Prompt Payment Act, and Failure to pay overtime wages under the Ohio Minimum Fair Wage Standards Act. Appellant also made a claim for punitive damages.

{¶4}    By Opinion and Entry filed March 7, 2017, Appellant's causes of action for Disability Discrimination and punitive damages were dismissed pursuant to summary judgment.

{¶5}    On March 28, 2017, a bench trial commenced in this matter on the remaining causes of action. At trial, the court heard testimony from Appellant, Appellee Matt Thompson and Rob Nixon, an independent contractor who worked with Appellant for Appellees.

{¶6}    Based on the testimony and evidence presented at trial, the court found that while Appellant was an employee of Fence Solutions prior to September, 2015, his status changed to that of an independent contractor on or around September 14, 2015. The court further found that Appellant was an independent contractor when his employment

was terminated from Fence Solutions. The court made additional findings that while employed by Fence Solutions, Appellant was paid at least minimum wage and that he received all overtime pay owed to him. The court found that Appellee Matt Thompson did not breach any duty owed to Appellant.

{¶7} Appellant now appeals, assigning the following errors for review:

**ASSIGNMENTS OF ERROR**

{¶8} "I. THE TRIAL COURT ABUSED ITS DISCRETION, AND OTHERWISE MADE A CLEARLY ERRONEOUS FINDING, BY RULING THAT APPELLANT WAS AN INDEPENDENT CONTRACTOR AND NOT AN EMPLOYEE WHEN APPELLANT SATISFIED MOST OF THE *BOSTIC* FACTORS AND THE INDUSTRIAL COMMISSION FOUND HE WAS AN EMPLOYEE.

{¶9} "II. A FURTHER ASSIGNMENT OF ERROR AND ABUSE OF DISCRETION WAS COMMITTED WHEN THE TRIAL COURT HELD THERE WAS NO WORKERS' COMPENSATION RETALIATION DESPITE THE EXISTENCE OF AN AUDIO RECORDING CORROBORATING THIS CLAIM AND APPELLEE THOMPSON TESTIFIED IN HIS DEPOSITION AND OPEN COURT THAT APPELLANT WAS FIRED FOR FILING A WORKERS' COMPENSATION CLAIM.

{¶10} "III. THE TRIAL COURT FURTHER ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY FINDING THAT THE PROMPT PAY ACT WAS NOT VIOLATED WHEN APPELLANT DID NOT RECEIVE HIS FINAL PAYCHECK UNTIL FOUR MONTHS AFTER HE RETAINED A LAWYER.

{¶11} "IV. A FINAL ERROR AND ABUSE OF DISCRETION WAS COMMITTED WHEN THE TRIAL COURT FOUND THAT THE APPELLANT WAS NOT ENTITLED TO

OVERTIME PAY WHEN APPELLEES FAILED TO PAY HIM FOR OVERTIME HOURS WORKED ON TWO SEPARATE OCCASIONS AND WERE AWARE OF THE DISCREPANCY."

**I.**

**{¶12}** In his First Assignment of Error, Appellant argues that the trial court erred in determining that Appellant was an independent contractor.

**{¶13}** "Whether someone is an employee or an independent contractor is ordinarily an issue to be decided by the trier of fact." *Bostic v. Connor*, 37 Ohio St.3d 144 (1988), paragraph one of the syllabus. However, "where the evidence is not in conflict or the facts are admitted, the question of whether a person is an employee or an independent contractor is a matter of law to be determined by the court." *Brown–Spurgeon v. Paul Davis Sys. of Tri–State Area*, 12th Dist. Clermont No. CA2012–09–069, 2013–Ohio–1845, ¶ 19.

**{¶14}** Whether one is an employee or an independent contractor depends on the facts of each case. *Grange Mutual Cas. Co. v. Laughlin*, 5th Dist. Licking No. 12-CA-0089, 2013-Ohio-4447. The key factual determination in making such a finding "is who had the right to control the manner or means of doing the work." *Bostic*, 37 Ohio St.3d at paragraph one of the syllabus. This inquiry is fact-intensive and requires the consideration of a number of factors, none of which are dispositive by themselves. *Id.* at 146. As noted by the Ohio Supreme Court, in making such a determination, "the factors to be considered include, but are certainly not limited to, such indicia as who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and

personnel used; who selects the routes traveled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts." *Id.*

{¶15} If the employer reserves the right to control the manner and means of doing the work, as well as the result, then an employer-employee relationship is created. *State ex rel. Nese v. State Teachers Retirement Bd.,* 136 Ohio St.3d 103, 2013–Ohio–1777, ¶ 33. On the other hand, if the employer only specifies the result and the worker determines the manner and means of doing the job, then an independent contractor relationship is created. *Id.* In determining what kind of relationship exists, multiple factors must be considered, including who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools, and personnel used; who selects the routes travelled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts. *Bostic* at 146.

{¶16} Due to the fact-intensive nature of the employee/independent contractor analysis, a trier of fact ordinarily ends up deciding whether a person is an employee or independent contractor. *Id.* at 145–46. In the case *sub judice*, this matter was tried to the bench so the trial court was the trier of fact.

{¶17} Here, Appellant signed an independent contractor agreement which stated that he was responsible for furnishing his own labor, equipment and/or tools; that Fence Solutions was not responsible for any accidents, stolen tools, or materials or other liabilities of Appellant; Appellant was responsible for his own damages and repairs; Appellant was responsible for his own taxes; Appellant was responsible for any personal injury; Appellant was responsible for his employees, subcontractors, materials, equipment, and all applicable taxes, benefits, and insurance, including Workers'

Compensation. Additionally, the agreement stated that while Fence Solutions can control the quality of the work, the subcontractor is an independent contractor in all respects. The contract also provided that payment was to be given after completion of the job and satisfaction of the contractor and owner.

{¶18} At trial, Appellant admitted that he was responsible for his own equipment and that he provided his own labor and equipment (T. at 145-146). Testimony was presented that Appellant was responsible for lost or damaged tools, the quality of his work, any accidents and all materials on the job site. (T. at 180-185). Testimony was also presented that Appellant could control the hours he worked at a job site and could hire other subcontractors. (T. at 186-190). Rob Nixon, a fellow independent contractor employed by Fence Solutions, stated that Appellant would often borrow/use Nixon's equipment. (T. at 243). The court also heard testimony that all of the independent contractors who worked for Fence Solutions, including Appellant were responsible for obtaining their own Workers' Compensation insurance and that all except Appellant had in fact done so. (T. at 186-187).

{¶19} While Appellant argues that Fence Solutions use of a W-2 rather than a 1099 supports the position that he was an employee, we do not find same to be determinative of his employment status.  Matt Thompson testified that he did not know why the accountant continued to issue a W-2 to Appellant rather than a 1099 after Appellant signed the independent contractor agreement.  (T. at 182, 213-214). Evidence was also presented that Fence Solutions did not withhold Federal, State or Local income taxes from Appellant's check, but rather paid said taxes for him, in addition to his paid wages. (T. 182, 214-216).

{¶20} Appellant also argues that the trial court abused its discretion in excluding the Industrial Commission's ruling wherein it found Appellant to be an employee of Appellee.

{¶21} The Industrial Commission is the exclusive evaluator of the weight and credibility of the evidence. *State ex rel. LTV Steel Co. v. Indus. Comm.,* 88 Ohio St.3d 284, 287, 725 N.E.2d 639 (2000). When an order is adequately explained and based on some evidence, even if other evidence of record may contradict it, there is no abuse of discretion, and a reviewing court must not disturb the order. *State ex rel. Mobley v. Indus. Comm.,* 78 Ohio St.3d 579, 584, 679 N.E.2d 300 (1997). Thus, the issue before us is whether the bureau's order was supported by evidence in the record.

{¶22} In the instant case, the trial court, in its March 7, 2017, Judgment Entry, characterized the Industrial Commission's ruling as a default judgment because Appellee did not participate in the proceeding. The trial court further found that the sole evidence before the Industrial Commission was a medical record from Fairfield Medical Center dated 11/4/15, and that such evidence did not allow for a conclusive determination that Appellant was an employee.

{¶23} Upon review, we find that the trial court was in a better position as the trier of fact to make the determination as to Appellant's status. At trial, both parties had an opportunity to present evidence in support of their positions.

{¶24} Based on the foregoing, we do not find that the trial court abused its discretion in excluding the findings of the Industrial Commission and making a determination finding that Appellant was an independent contractor. We find the trial court

had sufficient evidence before it to support its determination Appellee was an independent contractor, rather than an employee.

**{¶25}** Appellant's First Assignment of Error is overruled.

**II.**

**{¶26}** In his Second Assignment of Error, Appellant argues that the trial court erred in finding that Appellant was terminated for breach of his independent contractor agreement. We disagree.

**{¶27}** Appellant herein argues that his termination was the result of retaliation for filing a Workers' Compensation claim in violation of R.C. §4123.90, which prohibits employers from taking an adverse employment action against an employee because he filed, or pursued, a workers' compensation claim for an injury which arose and occurred in the course of his employment with the employer.

**{¶28}** R.C. § 4123.90 provides, in pertinent part:

No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer.

**{¶29}** "The scope of the statute is nevertheless narrow, and R.C. § 4123.90 does not prevent an employer from [taking an adverse employment action against] an employee who is unable to perform his or her duties * * * [or] for just and lawful reasons. The statute protects only against [adverse employment actions] in direct response to the filing or pursuit of a workers' compensation claim." *White v. Mt. Carmel Med. Ctr.,* 150

Ohio App.3d 316, 780 N.E.2d 1054, 2002–Ohio–6446, ¶ 36, quoting *Sidenstricker v. Miller Pavement Maintenance, Inc.,* Franklin App. Nos. 00AP–1146 and 00AP–1460, 2001–Ohio–4111, ¶ 55. "An employee may assert a claim under this statute only if he alleges and proves that he was demoted or dismissed, not because of his job-related injury, but rather because of his pursuit of a workers' compensation claim." *Blair v. Milford Exempted Village School Dist. Bd. of Edn.* (1989), 62 Ohio App.3d 424, 431, 575 N.E.2d 1190, abrogated on other grounds by *Coolidge v. Riverdale Local School Dist.,* 100 Ohio St.3d 141, 797 N.E.2d 61, 2003–Ohio–5357.

{¶30} Courts in Ohio have addressed claims filed pursuant to R.C. § 4123.90 under a burden-shifting framework. *See, e.g., Young v. Stelter & Brinck, Ltd.,* 174 Ohio App.3d 221, 881 N.E.2d 874, 2007–Ohio–6510, ¶ 20–21; *Wysong v. Jo Ann Stores, Inc.,* Montgomery App. No. 21412, 2006–Ohio–4644, ¶ 10; *Rollison v. Ball,* Marion App. No. 9–05–48, 2006–Ohio–5153, ¶ 19; *Stone v. Martin Marietta Energy Sys., Inc.* (Oct. 5, 1998), Washington App. No. 97CA602; *Kilbarger v. Anchor Hocking Glass Co.* (1997), 120 Ohio App.3d 332, 337–40, 697 N.E.2d 1080; *Napier v. Roadway Freight, Inc.,* Lucas App. No. L–06–1181, 2007–Ohio–1326, ¶ 12; *Cunningham v. Steubenville Orthopedics & Sports Medicine, Inc.,* 175 Ohio App.3d 627, 888 N.E.2d 499, 2008–Ohio–1172, ¶ 56; *Markham v. Earle M. Jorgensen Co.* (2000), 138 Ohio App.3d 484, 492, 741 N.E.2d 618; *Herron v. DTJ Ents., Inc.,* Summit App. No. 22796, 2006–Ohio–1040, ¶ 16; *White* at ¶ 37; *Prox v. Cleveland Steel Container Corp.,* Trumball App. No.2005–T–0045, 2006–Ohio–2770, ¶ 24–26; *McDannald v. Fry & Assoc., Inc.,* Madison App. No. CA2007–08–027, 2008–Ohio–4169, ¶ 17. This burden-shifting analysis is applied in the absence of direct

evidence of retaliation. *Wysong v. Jo Ann Stores, Inc.,* at ¶ 10; Cf. *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439.

**{¶31}** Under the burden-shifting scheme, the employee must first set forth a prima facie case of retaliation, then the burden shifts to the employer to set forth a legitimate non-retaliatory reason for the adverse employment action and, finally, the burden shifts back to the employee to establish that the employer used that non-retaliatory reason as a pretext for the adverse employment action. *Markham* at 492, 741 N.E.2d 618. "The burden of proving that the employer had a retaliatory motive remains at all times on the employee." *Id.*

**{¶32}** In establishing a prima facie case of retaliation, an employee must show that he: (1) was injured on the job, (2) filed a workers' compensation claim, and (3) suffered an adverse employment action in contravention of R.C. § 4123.90. *Kilbarger* at 337–338, 697 N.E.2d 1080.

**{¶33}** " 'The burden of establishing a prima facie case of retaliation is not onerous and is easily met." *Wysong* at ¶ 12, quoting *Greer–Burger v. Temesi,* Cuyahoga App. No. 87104, 2006–Ohio–3690, ¶ 15; *Meyer v. United Parcel Serv., Inc.,* 174 Ohio App.3d 339, 882 N.E.2d 31, 2007–Ohio–7063, ¶ 53, reversed on other grounds by Slip Opinion No. 2009–Ohio–2463. The activity protected by R.C. § 4123.90 is triggered when an "employee file[s] a claim or institute[s], pursue[s] or testifie[s] in any proceedings under the workers' compensation act." While a discharge, demotion, reassignment, or any punitive action taken by the employer constitutes an adverse employment action under R.C. § 4123.90.

**{¶34}** "If the plaintiff establishes his or her prima facie case, then the burden of production shifts to the employer to articulate a legitimate non-retaliatory reason for its action." *Sidenstricker* at ¶ 59. "[T]he burden does not require the employer to prove the absence of a retaliatory discharge. It merely requires the employer to set forth a legitimate, non-retaliatory reason for the employee's discharge." *Kilbarger* at 338, 697 N.E.2d 1080. "When considering whether an employer has a legitimate non-retaliatory reason for discharging an employee, the court must keep in mind the fact that an employee who files a workers' compensation claim is not insulated from discharge." *Markham,* 138 Ohio App.3d at 492, 741 N.E.2d 618. "R.C. 4123.90 does not operate to suspend the rights of an employer nor does it insulate an employee from otherwise lawful actions taken by the employer. To hold otherwise would render employers virtually powerless to combat fraud and/or blatant inefficaciousness on the part of any employee who happened to have a pending workers' compensation claim." *Id.* at 494, 741 N.E.2d 618.

**{¶35}** "[I]f the employer sets forth a legitimate, non-retaliatory reason, the burden once again shifts to the employee * * * [who] must then establish that the reason articulated by the employer is pre-textual and that the real reason for the discharge was the employee's filing of a claim under the Ohio Workers' Compensation Act." *Kilbarger* at 338, 697 N.E.2d 1080. Pre-text may be shown in a variety of different manners. The employee may show that the employer's proffered reason: (1) had no basis in fact, (2) did not actually motivate the adverse employment action, or (3) was insufficient to motivate the adverse employment action. *Wysong* at ¶ 13; *King v. Jewish Home,* 178 Ohio App.3d 387, 2008–Ohio–4729, ¶ 9.

**{¶36}** As this Court has found that the trial court's determination that Appellant was an independent contractor and not an employee as contemplated by R.C. §4123.90, we find no violation of said statute.

**{¶37}** Appellant's Second Assignment of Error is overruled.

**III.**

**{¶38}** In his Third Assignment of Error, Appellant argues that the trial court erred in finding that Appellee did not violate the Prompt Pay Act. We disagree.

**{¶39}** Ohio's Prompt Pay Statute is codified in R.C. §4113,15, which reads, in pertinent part:

(A) Every individual, firm, partnership, association, or corporation doing business in this state shall, on or before the first day of each month, pay all its employees the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and shall, on or before the fifteenth day of each month, pay such employees the wages earned by them during the last half of the preceding calendar month. If at any time of payment an employee is absent from his regular place of labor and does not receive his wages through an authorized representative, such person shall be entitled to said payment at any time thereafter upon demand upon the proper paymaster at the place where such wages are usually paid and where such pay is due. This section does not prohibit the daily or weekly payment of wages, the use of a longer time lapse that is customary to a given trade, profession or occupation, or establishment of a different time lapse by written contract or by operation of law.

**{¶40}** When wages are 30 days past due, the employer is liable for the amount due plus 6% or $200, whichever is greater. R.C. §4113.15(B).

**{¶41}** Appellant argues that Appellee failed to provide him with his last paycheck until four months after termination.

**{¶42}** At trial, Appellee Thompson testified that Appellant's final paycheck, in the amount of $348.00, was issued on November 12, 2015. (T. at 204). Appellee Thompson provided the court with text messages between himself and Appellant verifying Appellant's address on or about November 14, 2015.  (T. at 150).

**{¶43}** Based on the testimony of Appellee Thompson, we find the trial court had sufficient evidence before it to support its determination that payment was issued timely pursuant to R.C. §4113.15.

**{¶44}** Appellant's Third Assignment of Error is overruled.

### IV.

**{¶45}** In his Fourth Assignment of Error, Appellant argues that the trial court erred in finding that Appellant was not entitled to back overtime pay. We disagree.

**{¶46}** The Ohio's Minimum Fair Wage Standards Act requires all employers to pay a minimum wage and overtime to certain types of employees. *See* R.C. §4111.02 (duty to pay minimum wage), R.C. §4111.03 (overtime; compensatory time), and R.C. §4111.14 (purposes of fair minimum wage constitutional provision; implementation). Additionally, the Ohio Constitution was amended under Article II, Section 34a to ensure minimum wages for Ohio workers. Article II, Section 34a, Ohio Constitution specifically states that "[t]his section shall be liberally construed in favor of its purposes."

{¶47} In Ohio, claims for overtime pay are generally governed by R.C. §4111.03(A), which stated in pertinent part:

> (A) An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the "Fair Labor Standards Act of 1938," 52 Stat. 1060, 29 U.S.C.A. 207, 213, as amended.

{¶48} Appellant herein argues that he was not paid for overtime on two separate occasions: $17.00 in overtime for the week of June 22-26 when he worked 43.5 hours, and for the week of September 14-16 when he worked 47.75 hours. (T. at 104-110).

{¶49} Based on the testimony and evidence presented at trial, the trial court found that Appellant received all overtime time to which he was entitled. (Judgment Entry at 2, Findings of Fact ¶6). The trial court found that on the occasions when Appellant communicated to Appellee that he felt his paychecks were less than they should be, Appellee always paid Appellant what was owed to him. *Id.* The trial court further found that because Appellee paid Appellant's Federal, State and Local income taxes in addition to his agreed upon wages, Appellant actually received a wage benefit in excess of any alleged *de minimis* overtime wage discrepancy. *Id.*

{¶50} It is accepted that *de minimis* errors and admissions in complying with the prevailing wage laws are not intentional. R.C. §4115.13(C); *State ex rel. Associated Builders & Contractors of Central Ohio v. Franklin County Board of Commissioners,* 125 Ohio St.3d 112, 2010-Ohio-1199, 926 N.E.2d 600; *Ohio Valley Associated Builders &*

*Contractors v. Rapier Electric, Inc.,* 12th Dist. Butler Nos. CA2013–07–110 and CA2013–07–121, 2014-Ohio-1477, 2014 WL 1384605.

**{¶51}** We find no error in the trial court's determination that the actions of Appellee *sub judice* were *de minimis* or the result of clerical errors, and that Appellant had in fact received adequate compensation for his work.

**{¶52}** Appellant's Fourth Assignment of Error is overruled.

**{¶53}** For the forgoing reasons, the judgment of the Court of Common Pleas of Fairfield County, Ohio, is affirmed.

By: Wise, P. J.

Hoffman, J., and

Baldwin, J., concur.

JWW/d 0206